## No. 37,929

THE STATE OF KANSAS, *Appellant,* v. PAUL ROBERT SIMPSON, *Appellee.*

(220 P. 2d 175)

Opinion filed July 6, 1950.

*James N. Snyder,* assistant county attorney, argued the cause,. and *Harold R. Fatzer,* attorney general, *C. Harold Hughes,* assistant attorney general, and *Colonel H. Boone,* county attorney, were with him on the briefs for the appellant.

*Homer Davis,* of Leavenworth, argued the cause, and was on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was a criminal prosecution. The state appeals from rulings of the trial court pertaining to the admission of evidence and from a ruling sustaining a demurrer to the state's evidence.

An information was filed against Earl George Richards, Jr., and Paul Robert Simpson, charging them with the crime of robbery in the first degree committed against Chesley Houser. They were tried together and Richards was convicted and we are not concerned with him. The claims of error arise with respect to Simpson.

Our review of the evidence is intended only to be sufficient to permit discussion of alleged errors. Chesley Houser testified that he was a soldier stationed at Fort Leavenworth and on the evening of December 28, 1948, was in the City of Leavenworth. Around 1:00 o'clock a. m. of the next morning he was at a tavern three or four blocks north of the business section of the city. There he called a cab, but for reasons now immaterial, he started trotting downtown and after going some distance, heard a noise behind him, looked around and saw two men following. The next thing he knew he was struck on the head and knocked down and then slugged on the mouth and head. He started hollering and was warned to keep still. He let two men take his billfold containing money and his wrist watch. He knew the two men were colored but did not get a good enough look at them to identify them. When he was knocked down one man was on one side of him and the second man was on the other side. After taking his billfold and watch the two men left him and he went first to a taxicab station, from which the police were called and thereafter to the police station. A police officer testified he had seen Richards and Simpson at the described tavern around the time stated and other police were directed to bring them in. When police arrived at Simpson's house they told him the man he had hit was dead and Simpson replied, "I didn't do it; Peaches (Richards) did." Richards was also arrested and the billfold and watch were recovered from him. The appeal swings around the following: The policeman testified that after Simpson was brought to the station a written statement was taken from him. In answer to a question by the court, the county attorney stated he was going to attempt to introduce that statement in evidence. Thereupon the jury was excluded and at an extended hearing the

circumstances under which the statement was made were shown, but as there is no contention it was not freely and voluntarily made those details need not be mentioned, and it suffices here to say that Simpson signed a statement that he came to the above tavern about 1:35 a. m., the soldier (Houser) was standing on the porch and Richards was coming out. In the statement is an account of conversations between Richards and Simpson, but nothing about their pursuing Houser. It is stated, however, "I was with Earl Richards known as Peaches when he hit the soldier on head with a gun a nickel plated one—and soldier went down—Peaches hit him three or four times when he was down—. . ." Space precludes an extended review of colloquy between court and counsel concerning admission in evidence of this statement. Objection was made that it would prejudice Richards—the state asked that it be admitted against Simpson only and the jury properly instructed, it was contended the statement was not a confession and the state so conceded, there was argument as to whether the statement was exculpatory or against interest, and also that whether the facts stated were hearsay. The court stated that if the statement contained admissions that Simpson participated in the crime it would be admitted in evidence against him. Without definite statement of its reason, the trial court sustained objections to its being received in evidence. Later the state offered as a witness John Murray who was the county attorney at the time the crime was committed. He testified to a conversation with Simpson and that he had taken a written signed statement from Simpson. Again the jury was excused and at further hearing it was disclosed that Simpson, being warned as to his rights, had signed the statement, and again an extended colloquy took place between court and counsel at which the county attorney stated he desired to introduce the statement as an admission against interest and as an exculpatory statement, and after much argument, the court sustained Simpson's objection. The statement given Murray is more detailed than that given the police. For our purposes the important part is that Richards came out of the tavern, saw Houser running down the street and that Simpson followed about ten to fifteen feet behind Richards; that Houser fell down and before he could get up Richards hit him with a gun, and the soldier was hollering and Richards said for him to shut up and give him his money, and Simpson then

walked back north and Richards caught up with him. Other matters need not be mentioned.

After the court had refused admission of the second statement, the jury was returned to the courtroom and the state than rested. Thereupon the defendant Simpson demurred to the state's evidence against him on the ground there was no evidence to show that he had had anything to do with the matter. After some further argument the court sustained the demurrer and discharged the defendant. In due time the state perfected its appeal from the rulings on the rejection of the statements in evidence and on the sustaining of Simpson's demurrer to the state's evidence.

Shortly after the appeal was lodged in this court Simpson filed his motion that the state's appeal be dismissed for the asserted reason, summarily stated by us, that Simpson was properly charged in an information, entered a plea of "not guilty"; that a jury was impanelled to try the case; that the state made no objection or reservation on the refusal of the court to admit the statements above mentioned in evidence; that Simpson's demurrer to the state's evidence was sustained and that the state made no objection or reservation on that ruling, and therefore the appeal was moot. The motion as made was denied with leave to review on the hearing on the merits, and the matter now presented is discussed in the briefs.

In support of his motion to dismiss, Simpson directs our attention to G. S. 1935, 62-1703, which has remained unchanged since 1868, providing for appeals by the state in criminal actions, and after stating that the present appeal is not from a judgment quashing or setting aside an information, nor arresting the judgment, and obviously it is not, contends there was no question reserved by the state, either upon the rulings excluding the above mentioned statements or upon the ruling upon his demurrer to the state's evidence and in support of each contention he directs attention to the fact that after each ruling was made the state did not then make a specific objection to the ruling, or take definite exception thereto. In support he relies solely on *State v. Mitchell,* 143 Kan. 322, 54 P. 2d 917. In response, the state directs attention to the fact that the necessity of objections and exceptions to adverse rulings, formerly necessary, has been abolished, and especially to G. S. 1935, 62-1430, which was enacted in 1915, abolished bills of exceptions, and which, in substance, provides that on trial of a criminal action it shall not be necessary in order to secure a review by the supreme court of

any ruling or decision, to make exception but that all of the evidence and proceedings may be made of record and preserved for review in the same manner as is provided by law in civil actions, and our attention is directed to a number of cases arising before the change in the criminal code in 1915 and the revision of the civil code in 1909, and to *State v. Short*, 121 Kan. 233, 247 Pac. 114; *State v. Marek*, 129 Kan. 830, 284 Pac. 424; and *State v. Mitchell*, supra, which arose thereafter. In the Short case this court held that if the determination of the question reserved would be without practical result the appeal should be dismissed but where a new trial had been ordered on the motion of the defendant the reserved question was not moot. In the Marek case, in sustaining the state's appeal, the court considered whether a question had been properly reserved for review and stated that in that case there was nothing beyond objection and exception to show that the state reserved any question for review. After making a review of some of our authorities, to which reference is made, this court said:

"Under the authority of the last two cases cited and quoted from (*State v. Zimmerman*, 31 Kan. 85, 1 Pac. 257, and *State v. Craig*, 124 Kan. 340, 259 Pac. 802) it is held that all that is necessary for the state to do to reserve a question for presentation on appeal to the supreme court is to make proper objection or exception at the time the order complained of is made or the action objected to is taken. The state can lay the foundation for its appeal in the same manner that the defendant can lay the foundation for his appeal." (l. c. 834).

and held:

"To reserve a question for presentation to the supreme court on appeal by the state, it is not necessary for the state to do more than should be done by the defendant to lay the foundation for an appeal by him." (Syl. ¶ 4.)

In *State v. Mitchell*, supra, relied on by both parties, the question was alleged error in the exclusion of oral evidence, which it was determined had not been properly brought into the record on appeal. In discussing requisites of an appeal by the state it was said two things were necessary (1) a proper reservation of the question, and (2) a record which will afford ground for review. As to the first, this court quoted approvingly the syllabus from the Marek case as quoted above. As to the second, the record was held defective. The question of sufficiency of the record in the instant case is discussed later herein.

In our opinion Simpson's contention there was no reservation of a question for appeal may not be sustained. Throughout pro-

tracted argument of counsel and colloquy with the court, it was clear what the issue was as to the written statements of Simpson which the state attempted to introduce in evidence; that Simpson objected for reasons heretofore set out and that in the argument each party objected to the contentions made by the other and that the state objected to legal propositions suggested by the court as the argument proceeded. Insofar as Simpson's demurrer to the state's evidence was concerned, the argument was not extended, but it did include the effect of evidence being excluded. It is true that when the court ruled the state did not come forward with a renewed objection nor a statement it saved an exception, nor that it proposed to appeal to the supreme court. In view of the whole record that was not necessary. All of the rulings objected to resulted from Simpson's objection and demurrer, and if erroneous, it may not be said a reversal is without practical result. Certainly if the rulings had been adverse to Simpson he could have appealed. In our opinion the state is entitled to have the questions presented reviewed on appeal, if the record is otherwise sufficient.

Simpson further contends the state's appeal should be dismissed for the asserted reason the written statements were never properly brought into the record. He contends *State v. Mitchell* is directly in point and controlling. In the Mitchell case the evidence excluded was oral, it was not brought into the record in any way, and for that reason could not be considered on appeal. In the instant case the excluded evidence was documentary, and the documents were offered in evidence. It is to be borne in mind that the state also appeals from a ruling on Simpson's demurrer to its evidence. Inherent in the correctness of that ruling is the question of exclusion of evidence. The ruling on the demurrer raised a question of law, and under the facts presented by the record before us there was no question of fact for decision concerning the excluded statements. The sole questions were of law, and in our opinion it may not be said the record is not sufficient. See *Kirkpatrick v. Wickwire*, 138 Kan. 230, Syl. ¶ 2, 25 P. 2d 371, and cases cited, holding that the rule requiring evidence excluded at the trial to be produced on the hearing of a motion for a new trial has no application to documentary evidence. See also G. S. 1935, 62-1413, relative to applicability of rule in civil cases to criminal cases.

Were the written statements made by Simpson admissible in evidence? At the trial the objections made, as previously indicated,

were that the admission would be prejudicial against the codefendant Richards; that they were not confessions; that they were neither exculpatory nor against interest, and that the facts stated were hearsay. The state did not at the trial and does not now contend the statements were confessions. It does contend that the two defendants Richards and Simpson were being tried together, although separate trials could have been demanded, and the fact the statements were not admissible against Richards for any reason did not render them inadmissible against Simpson under proper instruction to the jury and that such a request was made. The state further contends the statements were exculpatory. That Simpson sought to say he had no part in the actual commission of the crime is clear. The state also contends that the statements show Simpson's presence at the scene of the crime and as such were statements against interest, a contention we sustain. Houser's testimony was that he was set upon, assaulted and robbed by two men neither of whom he could identify, and Simpson's statement he was present, but not participating in the crime, presented a question for the jury to determine as to whether he did participate. Without further comment, we think it was fully disclosed that the statements were voluntary and not coerced, concerning which there is no controversy, and that they were in part exculpatory and in part admissions against interest, and their exclusion when offered in evidence was erroneous. See *State v. Myers*, 154 Kan. 648, 121 P. 2d 286, and *State v. Smiley*, 167 Kan. 261, 206 P. 2d 115, and cases cited therein.

It is not necessary that we discuss any claimed error in the exclusion of the police officer's account of his oral conversations with Simpson.

The ruling on Simpson's demurrer to the state's evidence needs no extended discussion. Had there been no error in the exclusion of the statements above discussed, the ruling on the demurrer might be said to have been proper. In the situation now presented it was not.

The state's appeal is sustained and the cause is remanded for a new trial consistent with the views heretofore expressed.