No. 40,112

The State of Kansas, *Appellee*, v. Mary Callahan, *Appellant*.

(296 P. 2d 652)

Opinion filed May 5, 1956.

W. C. Jones, of Olathe, argued the cause, and *Harold R. Riggs*, also of Olathe, was with him on the briefs for the appellant.

*James H. Bradley*, county attorney, argued the cause, and *John J. Gardner*, assistant county attorney, *John Anderson, Jr.*, attorney general, and *Paul E. Wilson*, assistant attorney general, were with him on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: Mary Callahan was separately tried on an information charging her and one Ray R. Tipton with murder in the first degree in that they willfully, deliberately, premeditatedly and maliciously shot and killed John Joseph Callahan on January 2, 1955. The jury returned a verdict finding her guilty and that her punishment should be by life imprisonment. She filed a motion for a new trial alleging, among other grounds, that the trial court had admitted illegal and incompetent evidence over her objection and prejudicial to her rights. The trial court heard this motion and denied it and thereafter approved and accepted the verdict of the jury and sentenced her for life to the state industrial farm for women. In due time the defendant perfected her appeal to this court where she specifies as error the rulings on the various questions presented by her motion for a new trial. In view of our conclusion later stated, we shall confine our consideration to the contention that illegal and incompetent evidence was offered by the state and received by the trial court over her objection and to her prejudice.

In order that the complaint may be more readily understood, it is first noted that the state offered evidence tending to prove that about 6 o'clock a. m. of January 2, 1955, John Joseph Callahan had been shot three times with a .22 rifle and that his wife, the defendant, had said she was awakened by some noise and the movements of her husband with whom she was in bed; that she telephoned for help from a neighbor who responded and at that time John Joseph Callahan had fallen from the bed and was dead on the bedroom floor. A great deal of evidence about calling of a physician and of law enforcement officers and their testimony need not be detailed. Thereafter the state produced as a witness, Ray R. Tipton, also charged with the crime. He testified on direct examination at great length as to details and that he was twenty-six years of age and had

known Mary Callahan since he was about fourteen years of age and she was eighteen, to his seeing her over the years, to his being in or away from Kansas City, to sexual intimacies with her while she was married to Callahan, to her complaints against her husband, to a discussion of other murders or attempted murders of one spouse by the other, to her asking him to get her a gun; that she said she was going to shoot her husband, and that he procured a .22 rifle, took it to the Callahan residence and left it leaning against the front of an automobile standing in the driveway of the Callahan residence about 12:30 a. m., and returned there and got it about 6:15 a. m. on January 2, 1955, and thereafter disposed of it. Cross-examination will not be noted, nor will testimony of other witnesses who heard Mrs. Callahan threaten harm to her husband, other than as follows.

After the testimony above referred to had been received, the state as a part of its case in chief, called Mrs. Walter Callahan as a witness. She testified she was a sister-in-law of the defendant and had known her since in February, 1947, and that she knew defendant and her husband were separated in the summer of 1949 and reunited that fall, and she then had a conversation with the defendant in which defendant said she had been living in an apartment and when asked by the witness what she had done for money, defendant had replied an old boy friend had come back to town and he had given her some money. The witness said Mary Callahan mentioned no name and witness did not know who he was. Defendant moved that this testimony be stricken as prejudicial; there was no foundation to prove any issue in the case, the incident had happened eight years before and was remote. The state answered that the testimony tended to corroborate Tipton. The court overruled the motion. The witness was then asked if she had had any conversations with defendant concerning her pregnancies, and if so, when. Defendant objected stating she was charged with murder, not with adultery (abortion) and that the matter was remote and did not tend to prove or disprove any issue in the case. The state in answer said it had the burden to show that ". . . the defendant has the tendency, the inclination, and her vent of nature to take life, and that's what we intend to show." The trial court directed the state to proceed, and the witness stated she had such a conversation in 1948 over the telephone, that defendant said she was in quite a bit of pain and had just lost a baby; that it was twins; that she had had it done; that witness asked who did it and defendant

refused to say as it would get others in trouble; that witness told defendant it was murder to kill little babies that had no chance to live. Defendant's objection to the narration was met by a ruling the witness could testify to the conversation, the witness responded it was the conversation and she was directed to proceed, and she then stated what she had told the defendant, that it was murder to kill those babies; that they were both Catholics and knew that if a child wasn't baptized it wouldn't go to Heaven, and defendant had said some girl at her house had baptized the babies and they had disposed of them. It is to be noted that a great deal of this testimony was what the witness told the defendant, and not what the defendant said.

Defendant contends that the testimony of Mrs. Walter Callahan was inadmissible and highly prejudicial and prevented her from having a fair trial.

Before discussing that contention, we note the contention of the state that defendant's objections were not sufficient; that the objection against the testimony as to abortions was lodged only against a preliminary or foundation question and the only other objection made was against the witness giving a narration or sermon for which the trial court promptly admonished the witness, and our attention is directed to rules that an objection must be specific, is not good as to a ground not specified; if not made until answer has been given, it is necessary to move the answer be stricken, and that ordinarily an objection to the admission of evidence is insufficient unless the evidence is obviously inadmissible for any purpose or under any circumstances, citing 23 C. J. S. pp. 482, 487, 494 and 502. We shall not elaborate on those rules. If it be said that defendant's objection to the matter of pregnancies was only to a preliminary question, we take note of the state's response that the state intended to show defendant's tendency, inclination and "her vent of nature" to take human life, and on that basis was permitted to proceed. If the evidence did show that, it would be admissible, otherwise it would not. And it may be noted, the state's argument to the contrary, that when objection was made to the "narration and sermon" the witness answered it was the conversation, continued further and the trial court then said "No, just the conversation." and the witness continued. Taking all that occurred into consideration, we think the question of the admissibility of the evidence complained of is properly before us for determination.

The general proposition of the admissibility of evidence of crimes or acts other than the one for which defendant is being tried has received attention in many of our decisions. Limits of space preclude reference to many of them, but those hereafter mentioned are consistent with those not mentioned.

In *The State v. Reed,* 53 Kan. 767, 37 Pac. 174, it was said:

"As a general rule, testimony tending to show the commission of another offense than the one charged is not admissible; but where such offense is intimately connected with the one charged, important proof to establish the latter cannot be excluded because it may tend to prove that the defendant is guilty of another offense." (1. c. 774.)

In *The State v. Hays,* 113 Kan. 588, 215 Pac. 1109, it was said:

"The general rule is that the evidence, in a prosecution for a particular crime, which in any manner shows or tends to show that the accused had committed another crime wholly independent of that for which he is on trial, even though it is a crime of the same sort, is irrelevant and inadmissible. (*The State v. Kirby,* 62 Kan. 436, 63 Pac. 752.) There are well known exceptions to this general rule, as well established and supported by as good reason, as the rule itself, and one is that evidence of other crimes similar to that charged is relevant and admissible when it shows, or tends to show, a particular criminal intent which is necessary to constitute the crime charged. Any fact which proves, or tends to prove, the particular intent is competent and cannot be excluded because it incidentally proves an independent crime. (*The State v. Lowe,* 6 Kan. App. 110; *The State v. Reed,* 53 Kan. 767, 37 Pac. 174.) But for evidence of another offense to be competent for the purpose of showing the intent of the accused in the matter of the offense charged, the similar offense must be so related in kind to the one in question as to illustrate the question of intent. (16 C. J. 590.)" (1. c. 591.)

In *State v. Frizzell,* 132 Kan. 261, 295 Pac. 658, it was said:

"The rule against the admissibility of evidence of other similar but independent offenses should always be strictly enforced, and to justify any departure therefrom the evidence should come under one of the well-recognized exceptions to the general rule, among which are indentity of person or crime, similarity of system or plan, and to rebut a special defense." (Syl. ¶ 1.)

It has also been held that if proof of another crime tends to prove guilt of the crime being tried or that the two are so linked together that one cannot be shown without proving the other, regardless of the nature of the two, the general rule of exclusion does not apply. See, *e. g., State v. Baker,* 125 Kan. 173, 263 Pac. 1059; *State v. O'Neal,* 150 Kan. 76, 91 P. 2d 12; and cases cited.

And we have many decisions holding that as exceptions to the general rule of nonadmissibility, evidence of other acts and offenses may be received where the purpose is to show identity, intent,

method, plan, system, malice, motive, inclination, or tendencies, as the case may be. See West's Kan. Dig., Criminal Law, §§ 369 to 374; Hatcher's Kan. Dig. [Rev. Ed.], Criminal Law, §§ 267, 268, 269. And the matter of proof of other crimes is treated extensively in Wharton's Criminal Evidence, 12th Ed., Vol. I, §§ 232 to 248.

In the instant case the parties are generally in agreement as to the rules above set forth—where they disagree is as to their application. As no particular point is made thereon, we shall not comment on the fact the evidence under scrutiny was offered and received in the state's case in chief, and not to rebut any showing made by the defendant.

We shall devote little attention to the evidence that some one furnished defendant with money while she was living apart from her husband in 1949. We find it difficult to ascertain where it corroborated any of the state's previous testimony, which seems to have been the theory on which it was received, or if it be considered as an exception to the general rule of inadmissibility, wherein it was so. Were that the only complaint, perhaps it might be said the admission was not prejudicially erroneous, a matter we need not determine in view of our conclusion as to the testimony as to pregnancies and abortion.

With respect to the testimony last mentioned it is noted not that defendant personally committed any act on her own person to produce an abortion, but only that she submitted to an operation to produce that result, and whether she was guilty of any crime in so doing may be debatable. But in any event it is clear that such an act did not even remotely tend to show method, plan or system in connection with a homicide. Further, we think it may not be said that an abortion and a murder are similar offenses, or that one submitting to an operation to produce an abortion shows she bore any malice toward her husband or any inclination, tendency or intent to murder him. In our opinion the evidence under scrutiny was wrongfully received in evidence. The next question then is whether its admission was prejudicially erroneous, or put another way, did defendant have a fair trial?

In view of the nature of the charge we have examined not only the abstract and counter abstract, but also the transcript of the evidence, and it appears there was evidence which would warrant the verdict but that is not the prime test of a fair trial (*State v.*

*Winchester,* 166 Kan. 512, 203 P. 2d 229). It is to be noted that though much of the evidence was highly persuasive, the evidence that defendant fired the shots which killed her husband was circumstantial. We cannot say that the jury was not influenced by the testimony under scrutiny, and unless we can, we are in no position to say its reception in evidence was not prejudicial. We conclude that it was, and that defendant did not have a fair trial.

In view of our conclusion, defendant's other specifications of error need not be discussed.

The judgment of the trial court is reversed and set aside and the cause is remanded for a new trial.

FATZER, J., not participating.