No. 40,404

STATE OF KANSAS, *Appellee*, v. AMOS E. LILLIAN, *Appellant*.

(305 P. 2d 828)

Opinion filed January 12, 1957.

*Richard M. Sangster,* of Junction City, argued the cause, and *William F. Stahl,* was with him on the brief for the appellant.

*David H. Heilman,* county attorney, of Council Grove, argued the cause, and *John Anderson, Jr.,* attorney general, and *Paul E. Wilson,* assistant attorney general, and *Arthur J. Stanley, Jr.,* special assistant county attorney, of Kansas City, were with him on the brief for the appellee.

The opinion of the court was delivered by

THIELE, C. J.: For present purposes it may be said that Amos E. Lillian was tried on an information containing two counts, one charging robbery in the first degree, the other charging assault with intent to kill as defined by G. S. 1949, 21-431.

The following facts are not in dispute. On August 11, 1955, Charles Peterson was employed at a filling station in Council Grove, Kansas. About 8:35 p. m. a red and black Pontiac automobile bearing New Mexico license plates was driven into the station and a passenger alighted. Peterson went around the automobile and the driver asked him if he could change a fifty dollar bill, and upon receiving an affirmative answer, told Peterson to fill the gas tank and he did so. Peterson then went into the office of the station at which time the passenger was standing in a corner. Peterson opened the cash register and the passenger then stuck some round, hard object in Peterson's back, tossed a cloth bag on the desk

and ordered Peterson to put the money in it. Peterson put $140 in the bag. The passenger then ordered Peterson into the lubricating room, made him raise a grease rack operated by a hydraulic cylinder so that it was about two feet from the floor and then lie face down on the floor under the rack which was then lowered by the passenger to pin Peterson down. The passenger and the driver then left. Some time later, Peterson's predicament was discovered and he was released and treated by a doctor. The effects on his person need not be detailed. Efforts to locate the automobile failed, but in December Peterson viewed pictures of eight suspects but failed to make positive identification. In January he viewed a line up of persons at Emporia and identified Lillian as the passenger in the automobile, and the person who had robbed him.

Lillian was arrested and charged with the crimes above noted. Shortly thereafter James Kline, a member of the Kansas Bureau of Investigation, went to Lillian's apartment in Emporia to ascertain whether he possessed a pistol and found present at the apartment Estella Briggs and her baby. Evidence at the trial developed that Estella Briggs had given the pistol to Johnny Ratley, and that it was later in the possession of Carle, the sheriff of Lyon County.

After a criminal prosecution was commenced against Lillian and after the information had been filed, Lillian filed notice of a plea of alibi on which were endorsed the names of six witnesses, Paul Thouvenell, Mrs. Paul Thouvenell, Johnny Ratley, Dorothy Ratley, Jim Yearout, and Estella Briggs.

A trial by jury was had. Although a more detailed reference will be made later where necessary, the state's evidence tended to prove the facts above mentioned. Insofar as the abstract and counter-abstract disclose, the defendant who did not testify personally called as his only witnesses McKeever, later referred to, and the Ratleys and Paul Thouvenell above named. Without going into any details whatever, the Ratleys and Thouvenell accounted for the presence of Lillian at the residence of the Ratleys in Emporia on the evening of August 11, 1955, not later than 7:55 p. m.; that he then left and returned about 11:40 p. m. accompanied by Estella Briggs. It was also established that the distance between Emporia and Council Grove is about 35 to 40 miles.

As the result of the trial the jury returned a verdict finding Lillian guilty of robbery as charged and of endangering the life of Charles Peterson as defined by G. S. 1949, 21-435. Lillian's mo-

tion for a new trial was denied and he was sentenced on both counts. In due time he perfected his appeal to this court.

In a preliminary way it may be said that appellant presents no contention that his conviction is not supported by the evidence. His specification of errors covers only errors occurring at the trial and the overruling of his motion for a new trial, which is not separately argued.

Appellant states his first contention thus: "Was the evidence in the State's case in chief to the effect that the defendant was guilty of adultery, fornication, and illicit cohabitation, admissible where the defendant did not take the witness stand?" In support he reviews the testimony and directs attention to the rule as to evidence of other and independent crimes being generally inadmissible and the exceptions to the rule which he argues do not apply here, and cites various decisions and authorities all mentioned in *State v. Callahan,* 179 Kan. 603, 296 P. 2d 652, which he insists is controlling here. We cannot agree with the premise for the argument. The only evidence in the state's case in chief of which complaint is made is that of the witness Kline who stated he searched the Lillian apartment for a gun and in response to a question as to who was present answered "Estella Briggs and her baby" and that of the witness McKeever who testified without objection he rented an apartment to Lillian; that Mrs. Briggs lived there, and that he didn't know whether she was his wife. He was then asked if she carried the name Lillian and appellant's objection was sustained. The other evidence of which complaint is made consists of questions asked on cross-examination of McKeever when called as a witness by appellant and the alibi witness Johnny Ratley, as to where appellant lived and who occupied the apartment. The evidence as to the use of a firearm in the robbery at Council Grove is not abstracted, but it is disclosed that witness Kline was attempting to trace and find a gun, at least suspected of being used in the robbery, and he searched appellant's apartment and learned from Mrs. Briggs that she took the gun out of a diaper bag and gave it to Ratley. The gun ultimately reached Sheriff Carle as elsewhere mentioned. The cross-examination as to the apartment and its occupants may possibly have been too extended, but we cannot say there was any abuse of the trial court's discretion. We can and do say that the evidence complained of did not have the effect of charging appellant with any crime other than that for which he was

being tried, and the rule as to evidence of other and independent crimes has no application.

Appellant's second contention is that the county attorney was guilty of prejudicial misconduct. Appellant had called Paul Thouvenell as a witness who, after stating his name, voluntarily stated he was afraid to testify, and that the county attorney had said to the witness he knew where the witness had been and witness was going back if he testified Lillian was with him on that day. After that statement was volunteered the state moved for a hearing outside the presence of the jury and the trial judge, counsel and the reporter retired to the judge's chambers where a discussion, not set forth in the abstract, was had. Thereafter when the trial was resumed the trial court ruled that the voluntary statement of the witness be stricken from the record and "the jury are instructed to disregard it." The trial court further observed, in ruling on appellant's motion for a mistrial, that the prejudice, if any, caused by the statement would be more prejudicial to the state than to the defendant, and denied the motion. As noted above, what was said at chambers is not abstracted, but from protestations made on the argument before us, it appears the county attorney denied making the statement. Appellant's argument is not very clearcut. Our attention is directed to G. S. 1949, 19-702, defining the duties of a county attorney and to the fifth canon of the *Canons of Professional Ethics,* 164 Kan. XI, XII, that the duty of a lawyer engaged in public prosecution is not to convict but to see that justice is done, and that suppression of facts capable of establishing innocence of an accused is highly reprehensible, and it is said that the county attorney overstepped his bounds in threatening the witness, and his conduct in so doing was such that accused was not assured of a fair trial. Notwithstanding the volunteered statement of the witness, we cannot reach a conclusion the statement was true, but if it were, we think, in view of the trial court's instruction to the jury and its remarks when denying the motion that a mistrial be declared and the further fact that after the trial court's ruling the witness testified fully, it may not be said the incident deprived the accused of a fair trial.

Appellant's third contention is that the special prosecutor was guilty of misconduct when in argument of the cause to the jury he commented on the fact that Estella Briggs was not called to the stand; that if there was any one who could testify differently than

Charles Peterson, it was Estella Briggs and not one word had been heard from her where Lillian might have been during the gap (in the alibi) which they themselves hadn't been able to fill. The abstract does not disclose that there was any objection made at the time of the argument. Our attention is directed to *State v. Hubbard,* 165 Kan. 406, 195 P. 2d 604, and similar cases, holding that argument should be based on the facts in the case and that vituperative language calculated to prejudice the jury is not proper, and an inferred argument is made that the statements made were outside the record and were abusive. As has been noted, no objection to the argument was lodged at the time it was being made, and under *State v. Vandruff,* 125 Kan. 496, syl. 4, 264 Pac. 1060, and *State v. Bonomo,* 173 Kan. 675, 250 P. 2d 833, the question is not open to review on appeal. We note, however, that insofar as abusive or vituperative language is concerned the contention is groundless. We note also that the appellant's sole defense, so far as the abstract discloses, was an alibi and on his notice of a plea of alibi, Estella Briggs was listed as a witness. His witnesses testified that about 11:30 p. m. of the evening in question, accused and Estella Briggs appeared at the Ratley home, and other evidence disclosed they lived at the same apartment. She was not called as a witness by the appellant. It has been said on more than one occasion that it is proper for counsel to comment upon and make inferences which may be drawn from the evidence (*e. g., The State v. Hinkley,* 81 Kan. 838, syl. 6, 106 Pac. 1088). It appears to us that an inference might well be drawn from the testimony that if any one knew where appellant was between 7:55 p. m. and 11:30 p. m., it would be Estella Briggs who came with him to the Ratley house at the latter time, and that it was not improper for the special prosecutor to make the argument he did.

Appellant's fourth contention is that the trial court erred in permitting Peterson to testify that McNeese identified appellant as one of the two robbers seen earlier in Council Grove on the evening of the robbery. Peterson had testified as to the circumstances of the robbery and that the automobile in which the robbers came into his station was a red and black Pontiac with New Mexico license tags. On cross-examination appellant's counsel inquired over the state's objection that the question called for hearsay whether the automobile was seen by any one other than the witness, who answered he had heard the next day that some people had seen it.

The witness was then asked who, and answered it was seen at another filling station. On redirect examination the witness stated it was the McNeese station, and that McNeese had died a few days before the trial commenced. The witness was then asked whether he had also learned that McNeese had recognized appellant as one of the occupants of the automobile. Appellant's counsel then said "I object to that and ask that it be stricken." Counsel for the state answered that the appellant had opened up the matter and all of it could be shown. The trial court ruled appellant had opened up the matter and the witness had the right to explain fully, and the witness answered the question in the affirmative. The gist of appellant's argument the admission of the answer was erroneous is that matters not brought out on direct examination are not proper subjects of cross-examination (*e. g., State v. Moore*, 110 Kan. 732, 205 Pac. 644, and *Lee v. Downing*, 113 Kan. 329, 214 Pac. 786), and that the redirect examination is confined to the subject matter of the cross-examination and a new matter may not be opened up on redirect examination that was not opened up by the cross-examination (*e. g.*, 58 Am. Jur. 349). The state contends that appellant by his cross-examination brought into the case the question the witness's having heard of other persons having seen the car and its occupants, and it had the right to have the whole matter shown, in support of which it cites *State v. Rafferty*, 145 Kan. 795, 67 P. 2d 1111, and *State v. Barnett*, 156 Kan. 746, 137 P. 2d 133. In our opinion the authorities relied on by the appellant do not support his contention for over objection he inquired about the automobile being seen in Council Grove on the evening in question and thereby opened up the matter for explanation by the state. Even if it be said the answer as to identity was a little far afield, the objection made by the appellant was not specific that the redirect examination went too far or that hearsay testimony was being elicited. So far as the record discloses, Peterson had positively identified appellant as the passenger in the red and black Pontiac bearing New Mexico license plates and the person who robbed him and put him under the grease rack. Taken in its most unfavorable light to the appellant the answer complained of was only corroborative, and its admission, even if it might be said to have been erroneous, was not prejudicial. The contention of error is not sustained.

Appellant's fifth contention is that a statement made by Sheriff Carle while testifying was so inflammatory and prejudicial that he

was denied a fair trial. This contention arises from the following. While testifying, Carle was asked whether the state's Exhibit 8 was the same pistol which was turned over to him by John Ratley and he answered in the affirmative. The county attorney then asked "Do you mind leaving this here so that we can offer it in evidence?" and Carle answered: "If it is possible to get it back—we have a charge on Mr. Lillian—" An objection was made that the answer was improper and prejudicial. The trial court sustained the objection and instructed the jury to disregard it. Appellant argues that the question asked invited the answer made and was a deliberate act of the county attorney and the sheriff to introduce matters outside the scope of the trial and was prejudicial to appellant. We cannot agree. The question, while perhaps unnecessary insofar as admission in evidence of the pistol is concerned, certainly did not call for any answer but "yes" or "no," and the remark about a charge against Lillian was not responsive to the question. The trial court promptly sustained the objection made and instructed the jury to disregard the answer. Under the circumstances any error there may have been was cured.

Appellant's sixth contention is that the court erred in refusing to admit in evidence a transcript of the testimony taken at the preliminary hearing of an alleged accomplice of appellant to rebut the state's evidence of Peterson that he had heard that McNeese identified appellant, a matter partially considered in discussing appellant's fourth contention. The abstract does not disclose the facts leading up to a statement made by appellant that one Sutton was charged as an accomplice of appellant and that at Sutton's preliminary McNeese, mentioned above, was a witness and testified, in substance, that he saw the robber's automobile in his station on the night in question, and that at the conclusion of his testimony he was asked on cross-examination whether that was all he knew about the case, to which he gave an affirmative answer. No effort is made to abstract the transcript which it is said discloses the above. Appellant says that the "above quoted portion of the transcript" (although none is quoted) was offered at the trial and again on the hearing of the motion for a new trial.

The state objects to any consideration of the contention on the ground the excluded evidence was not produced at the hearing of the motion for a new trial by affidavit, deposition or oral testimony, as required by G. S. 1949, 62-1414, and 60-3003. The first section

is that of the criminal code making parts of the code of civil procedure applicable in criminal trials. That section has been held to include the second section which is a part of the code of civil procedure and deals with the production of evidence at the hearing of a motion for a new trial. In construing the latter section it has been held that the rule requiring evidence excluded at the trial to be produced at the hearing of a motion for a new trial does not apply to documentary evidence rejected at the trial (*Kirkpatrick v. Wickwire*, 138 Kan. 230, syl. 2, 25 P. 2d 371, *Mitchell v. Dawson*, 164 Kan. 630, 634, 191 P. 2d 913, *State v. Simpson*, 169 Kan. 527, 532, 220 P. 2d 175, and cases cited). The state's objection to any consideration for the reason stated is not sustained.

It does not follow, however, that appellant's contention of error is sound. The record as abstracted does not disclose what objections the state made to the transcript's being received in evidence, nor what reason the trial court may have given in refusing to admit it, and we are not aware whether it was a failure to show any proper predicate was laid to permit use of the transcript, or whether it was because the transcript pertained to a cause in which appellant was not a party or because its statements did not tend to disprove Peterson's statement of what he had been told, or whether it was an attempt to rebut what, except as heretofore mentioned in discussing the appellant's fourth contention, was hearsay. The gist of appellant's argument is that testimony of a deceased witness is admissible on trial if defendant had an opportunity to examine the witness at a previous preliminary examination (*State v. Wilson*, 24 Kan. 189, and *State v. Boyd*, 140 Kan. 623, 38 P. 2d 665), which for present purposes may be said to be correct, but that the serious question is whether the parties must be identical or whether it is sufficient their interests be substantially the same, citing Tracy on Evidence (1952) pg. 251, Wigmore on Evidence, §§ 1370-1394, from each of which he quotes briefly, and generally an annotation in 122 A. L. R. 425, and he argues that the interests of appellant and Sutton were so nearly the same that they may be said to be identical. The difficulty with the argument is that as abstracted there is no mention of Sutton, whether he was identified by McNeese, nor what the situation was as disclosed by the evidence at the preliminary. So far as the record before us discloses, the questions asked McNeese at Sutton's preliminary dealt with Sutton's connection with the robbery and when McNeese was asked if that was

all he knew, the reference was to Sutton, the only one under examination. We note further that Peterson's statement as to what he had heard McNeese had said could be rebutted only by showing that he had not heard what he said he had. His statement would not be rebutted by showing that McNeese had said something different on some other occasion. In other words, it was Peterson's statement, not McNeese's, that was to be rebutted, and for that reason the trial court may have refused to admit the transcript in evidence. It has not been made to appear the trial court erred in excluding the proffered testimony.

Our examination of the abstract, counter-abstract, and the briefs of the parties leads us to conclude the trial court did not err in the matters of which complaint is made, and its judgment is affirmed.

HALL, J., not participating.