Andrew SANVILLE, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 4964.

Supreme Court of Wyoming.

April 19, 1979.

Patricia Schick, Laramie, signed the brief and appeared in oral argument on behalf of the appellant.

John J. Rooney, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen. and Thomas C. Bogus, Asst. Atty. Gen., signed the brief of appellee. Leonard D. Munker, Senior Asst. Atty. Gen., appeared in oral argument on behalf of the appellee.

Before RAPER, C. J., McCLINTOCK, THOMAS and ROSE, JJ., and GUTHRIE, J., Retired.*

RAPER, Chief Justice.

The principal issues in this case involve an application of the concepts of opening the door to ordinarily inadmissible evidence and invited error. The appellant-defendant was convicted of one count of obtaining money by false pretenses in violation of § 6–3–106, W.S.1977,[1] and one count of delivering a fraudulent check in violation of § 6–3–110, W.S.1977.[2] He was sentenced to

---

\* ROONEY, J., having recused himself from participation in this case, GUTHRIE, J., Retired, was assigned, having been retained in active judicial service pursuant to § 5, Art. V, Wyoming Constitution and § 5–1–106(f), W.S.1977, by order of the court entered on January 1, 1979.

1. § 6–3–106 in pertinent part:

"If any person or persons shall knowingly and designedly, by false pretense or pretenses, obtain from any other person or persons any choses in action, money, goods, wares, chattels, effects, or other valuable thing whatever, with intent to cheat or defraud any such person or persons of the same, every person so offending shall be deemed a cheat, and upon conviction, where the value of such chose in action, money, goods, wares, chattels, effects or other valuable thing shall be twenty-five dollars ($25.00) or more, shall be imprisoned in the penitentiary for a period not more than ten (10) years. * * *"

2. § 6–3–110, in pertinent part:

"(a) Whoever, with intent to defraud by obtaining money, merchandise, property, credit, or other thing of value, although no express representation is made in reference thereto, or who, in the payment of any obligation, shall make, draw, utter or deliver any check, draft or order for the payment of money in the sum of fifty dollars ($50.00) or upwards upon any bank, depository, person, firm or corporation, knowing at the time of such making, drawing, uttering or delivering that the maker or drawer has not sufficient funds in such bank, depository, person, firm or corporation for the payment of such check, draft or order in full upon its presentation, shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than one thousand dollars ($1,000.00) or imprisoned in the county jail for not more than one (1) year or both.
* * *

a term of imprisonment of not less than two years nor more than five years on the former conviction and six-months imprisonment on the latter, the sentences to run concurrently. He appeals the judgment of the district court asserting: (1) the trial court committed reversible error in admitting, over defendant's objection and on the ground that defense counsel had "opened the door," hearsay testimony that the F.B.I. had identified fingerprints on certain checks as defendant's; (2) defendant's constitutional right to confront the witnesses against him was violated by admission of hearsay testimony as to F.B.I. identification of his fingerprints; (3) it was error to admit, over defendant's objection, evidence that other bad checks signed with defendant's name had been received by the payor bank where there was no testimony identifying defendant as the person who passed the other checks; (4) the prosecution failed to meet its burden of proof as to all the elements of the offense charged in that it failed to prove that fraudulent representations were made to the person who suffered the loss; and (5) the Wyoming Fraudulent Check Statute preempts and takes the place of the Wyoming False Pretenses Statute where check offenses are charged.

We will affirm.

The defendant was charged with two counts of obtaining money by false pretenses in violation of § 6–3–106, W.S.1977, (footnote 1).[3] Testimony from police officers established that defendant was arrested in Cheyenne and a driver's license issued to Andrew Sanville was taken from his wallet at the time he was booked. This driver's license was later introduced in evidence as an exhibit of the State.

Danny Graham, an officer of the First Wyoming Bank, Laramie, Wyoming, testified that defendant was referred to him on February 2, 1977, because he wished to cash a payroll check on a Greeley, Colorado bank, drawn on the account of Miller Construc-

tion Company. Defendant related to the witness that the company was doing various sorts of work around the county, he lived on County Road 22 and that his landlord was Fred James. Mr. Graham testified further that defendant presented him with a driver's license, the photograph on which matched his person, and he then okayed the check to be cashed. Some of the information on the original check in evidence was faded or obliterated through processing done by the F.B.I. Mr. Graham identified markings which he made underneath defendant's endorsement which included defendant's address, the name of his purported landlord, and the number from his Wyoming driver's license, the same as that taken from defendant when booked. The check was in fact cashed and money paid to defendant in the amount of $140.96. The check was later returned marked account closed after which it was delivered to the Laramie Police Department.

Officer Valdez of the Laramie Police Department took into custody the check which he identified and traced as to chain of custody, including that it had been sent to the F.B.I. for processing and that its appearance was altered during that process.

An officer of the Bank of Laramie, Laramie, Wyoming, identified as an exhibit and testified about a check which was the subject of the second count of the charges against defendant. She related that the check, when handed to her, was endorsed and bore a driver's license number, the same as on that taken from defendant when booked. She cashed the check in the amount of $118.59, later dishonored by the Greeley, Colorado bank on which it was drawn and then referred to the Laramie Police Department.

Defendant's purported landlord testified that defendant had rented a house from him for a few months in 1974 but that he had not seen him since.

---

3. A lesser included offense instruction was given to the jury dealing with § 6–3–110, W.S.1977 (footnote 2); forms of verdict were given to the jury empowering the jury to find appellant guilty or not guilty of the charged offenses and empowering the jury to find him guilty or not guilty of the lesser included offenses.

An officer of the First National Bank of Greeley, Colorado testified and identified the checks which were the subject of the charges against defendant as well as ten other checks all drawn on the Greeley bank and payable to and endorsed by the name and signature of Andrew Sanville, all on the same account. The checks were written during the period of January 26 through January 31 of 1977. He stated that the account was opened on November 22, 1976, in the name of Russell C. Miller and that only one deposit of $50.00 was made to the account. The account was subsequently closed because the first statement on the account mailed out was returned and the balance had been drawn to below zero.

A representative of the Wyoming Department of Revenue testified about the issuance of the driver's license which was obtained from Andrew Sanville at the time of his arrest. At this point, the State closed its evidence. The defendant presented no evidence.

Defendant's first two assigned errors will be treated together. At the time Officer Valdez was testifying, he mentioned that the checks were changed somewhat in appearance as a result of processing by the F.B.I. On cross-examination, the following exchange took place:

"Q. Thank you. Mr. Valdez, you have testified that this check went off to Washington, D.C., to the F.B.I.

"A. Yes, sir, I did.

"Q. And what is it that the F.B.I. did with this check that you know of?

"A. They processed it for latent fingerprints, chemically, and I also requested that they make handwriting comparisons.

"Q. Isn't it true that in order to make handwriting comparisons they need authenticated samples of the subject's handwriting?

"A. Yes.

"Q. *And isn't it true that the F.B.I. indicated a fingerprint on that check belongs to a party that you think is guilty of passing that check at the bank?* (Emphasis added.)

"A. The fingerprint—

"Q. *Isn't it true that the F.B.I. has indicated to you a positive identification of a latent fingerprint of a party you think, you personally think passed that check at that bank?* (Emphasis added.)

"A. Yes.

"Q. *Is the F.B.I. going to be called to testify in this trial?* (Emphasis added.)

"A. As far as I know, they are not.

"MR. DUNCAN: Thank you. I have no further questions.

"REDIRECT EXAMINATION

"BY MR. ZIMMERS:

"Q. Mr. Valdez, whose fingerprint did the F.B.I. indicate was on that check that passed the check?

"MR. DUNCAN: We would object—

"THE COURT: State your objection.

"MR. ZIMMERS: Pardon me?

"THE COURT: State your objection.

"MR. DUNCAN: We would object on the grounds of hearsay, your Honor. The F.B.I [sic] is more than willing to come and testify at trials such as this, and they are not here to cross-examine, and it is clearly hearsay.

"THE COURT: It is overruled. You opened the door, Mr. Duncan.

"Q. (By Mr. Zimmers) And whose fingerprint did they state was on the check that you think passed the check?

"A. (By Mr. Valdez) Andrew Sanville's."

Defendant asserts that the evidence elicited by the prosecutor that Andrew Sanville's latent fingerprint was identified in the F.B.I. report as being on the check is hearsay and inadmissible even under the "open door" doctrine. He further asserts that it resulted in a denial of his rights under the Sixth Amendment of the United States Constitution [4] and Art. I, § 10 of the

4. In pertinent part:
  "In all criminal prosecutions, the accused shall enjoy the right  *  *  *  to be confronted with the witnesses against him; *  *"

Wyoming Constitution.[5]

We will discuss defendant's allegation of error in the light of the two important legal principles, the "open door" doctrine and the rule of invited error. It is readily apparent to us that the defense counsel, with full knowledge that the State did not intend to use the fingerprint evidence developed by the F.B.I., opted to pursue the matter for the purpose of creating a negative pregnant in the minds of the jury, i. e. the fact that the F.B.I. report implicated somebody and, since the State was not going to use the F.B.I., the conclusion must be that the report implicated someone other than the defendant. Defense counsel pressed his questioning to the very brink and then stopped. He actually did so twice, by asking the question a second time for emphasis. In order to counter an implication which had the appearance of hurting the State's case, the prosecutor sought to have answered one question: who was the unidentified "someone" the defense counsel alluded to in his questioning? There is no evidence of bad faith by the State—that the F.B.I. had not in fact identified the fingerprints as those of the·defendant.

We would readily concede that this is not the appropriate method for introducing fingerprint evidence and had the prosecutor pursued such a method in the first instance, it would be both inadmissible hearsay and a violation of defendant's right to confront witnesses against him. Here the door was opened by defendant's counsel in a glaringly deliberate manner designed to create an impression that, as the record reveals, simply did not exist. The matter was partially exposed for the jury's consideration and under the doctrine of the open door the State was, under the circumstances of this case, entitled to complete the story. The State is entitled to be treated fairly, just as is the defendant.

■ It is usually a basic function of redirect examination to allow a witness to explain his testimony elicited on cross-ex-

amination. *State v. Price*, Mo.1974, 513 S.W.2d 392; *People v. Wesley*, 1959, 18 Ill.2d 138, 163 N.E.2d 500; *State v. Lillian*, 1957, 180 Kan. 640, 305 P.2d 828. The opening of the door concept, however, reaches further and is an extension of that familiar rule. Succinctly stated, the "opening the door" rule is that a party who in some way permits the trial judge to let down the gates to a field of inquiry that is not competent but relevant cannot complain if his adversary is also allowed to avail himself of the opening within its scope. *Opie v. State*, Wyo.1964, 389 P.2d 684, 690–691; *State v. Williams*, Mo.1970, 448 S.W.2d 865, 868; *U. S. v. Geller*, 9th Cir. 1973, 481 F.2d 275, 276; McCormick, Evidence, Ch. 6, § 57, pp. 131–133 (1972); see cases digested in West's Digest System, Witnesses, Key Number 287. We specially note that that is all the prosecutor did or sought to do. He did nothing more than fill in the obviously disconcerting blank that the defense created.

■ Defendant cites no authority for the proposition that evidence which is admissible under the open door doctrine is a violation of the constitutional right to confront witnesses. The topic is generally discussed at McCormick, Evidence, Ch. 24, § 252, pp. 604–607 (1972). In view of this lack of authority and in view of our study of the cited discussion, as well as the cases which have dealt with the open door doctrine, we perceive no confrontation problem in the context of this case. The evidence was properly admissible under the open door doctrine.

■ A brief analysis in the light of the rule of invited error reaffirms what is said above. A reviewing court is not receptive to the idea of reversals where error is invited. *State v. Cousins*, 1966, 4 Ariz.App. 468, 421 P.2d 901. In reviewing the record, we can only conclude that the defense deliberately set up the situation about which complaint is now made. Under the circumstances of this trial, it was only natural that

---

5. In pertinent part:
   "In all criminal prosecutions the accused shall have the right to  *  *  *  be confronted with the witnesses against him,  *  *  *"

the prosecuting attorney would desire to explain a false inference created by defense cross-questioning. Likewise, it is quite predictable that the trial judge would understand the question presented to him as one governed by the "open door" doctrine. Indeed, defendant's objection as to the confrontation problem is somewhat vague. Certainly there is nothing in the objection which particularly helped the trial court in making his ruling. Defendant may not complain on appeal of an error which he himself invited. *Daellenbach v. State*, Wyo. 1977, 562 P.2d 679. We can only conclude that error, if any in this instance, was invited. Invited errors will not normally be grounds for reversal unless they go beyond a pertinent reply or are necessarily prejudicial. *State v. Smith*, 1966, 101 Ariz. 407, 420 P.2d 278, 280. In this case the prosecutor's reply was pertinent and minimal. We can only conclude that it was not necessarily prejudicial for several reasons. The evidence of the State was very strong and included positive eyewitness identification and well-connected exhibits. Under these circumstances, the statement was only cumulative of other evidence. The defendant had the opportunity to establish that the officer had only hearsay knowledge but did not follow through and do so. The defendant had the opportunity to ask for a limiting instruction but did not do so. Under these circumstances, we can only assume that defendant preferred to bring the error here, which he invited, foregoing less drastic remedies than seeking reversal. He must bear the consequences of that decision. We conclude that this matter comes within the doctrine of invited error and that defendant's inquiry into the forbidden area was purposeful and deliberate. Where application of the invited-error doctrine would

be tantamount to waiver of the right of confrontation, purposeful rather than inadvertent inquiry into off-limits matter is required for application of the rule. *United States v. Taylor*, 5th Cir. 1975, 508 F.2d 761, 764; see also, *United States v. White*, 4th Cir. 1967, 377 F.2d 908, 911.

Defendant asserts that the admission in evidence of ten other bad checks, all on the same account as that of the two principal checks on which he was convicted and all payable to him and bearing his endorsement, was reversible error. Rule 404(b), W.R.E.[6] provides that such evidence may be used for such purposes as proof of motive, opportunities, *intent*, preparation, *plan*, knowledge, identity, or absence of mistake or accident. This rule, incidentally, is only a codification of the long-standing rule of Wyoming case law, *State v. Lindsay*, 1957, 77 Wyo. 410, 317 P.2d 506.

Moreover, the admission of evidence is within the sound discretion of the trial court and absent a clear abuse of discretion will not be disturbed. *Daellenbach v. State*, supra at 562 P.2d 682. Defendant did not address this standard of review or cite any authority to persuade us that the admission of this evidence was an abuse of discretion. Our independent review of the authorities convinces us that the evidence was, indeed, admissible to show intent, plan and scheme.[7] We see no hint of abuse in the trial court's decision that its probative value outweighed any prejudicial effect. Rule 403, W.R.E. It is much stronger here where the trial judge gave specific cautioning and limiting instructions to the jury both at the time the evidence was admitted and in the written instructions.[8] We perceive no error.

---

6. Rule 404(b), W.R.E.:

"(b) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

7. See *Kwallek v. State*, Wyo.1979, 591 P.2d 895, pp. 900–901.

8. Instruction No. 13:

"Ladies and gentlemen of the jury, you are instructed that State's Exhibits 5A, 5B, 5C, 5D, 5F, 5G, 5H, 5I, 5J, 5K, and 5L have been received by the Court without proof of the authenticiy [sic] of the endorsement on such exhibits. However, you may give these ex-

██ Defendant alleges error in that the prosecution failed to prove that the fraudulent misrepresentations were made to the person who suffered the loss in reliance thereon. Defendant relies solely upon the case of *Martins v. State*, 1908, 17 Wyo. 319, 98 P. 709. The error is not pursued beyond the boundaries of the above-cited case, and defendant concludes his argument with an invitation that we consider that case in light of the matter at bar. In the case before us, it was alleged in the information that defendant obtained the money in question from two banks through persons who worked for those banks. The Martins case is not at all in point and has no effect upon the case at bar. See 17 Wyo. 331–332 for a comparison. The Martins case is one in which there was a fatal variance between the allegations and the proof. Without deciding, we would question the current validity of that case under modern rules. In any event, we perceive no such problem in the evidence presented in this case. Since there is no cogent argument or authority present-ed on this point, we will not consider it further. *Searles v. State*, Wyo.1979, 589 P.2d 386, 390, and cases there cited.

██ Finally, defendant argues that insofar as fraudulent checks are concerned, the Fraudulent Check Statute (footnote 2) preempts the False Pretenses Statute—when check offenses are charged. This matter was in no way called to the attention of the trial court, and we will not now consider it on appeal. *Edwards v. State*, Wyo.1978, 577 P.2d 1380; *Hampton v. State*, Wyo.1977, 558 P.2d 504; *Nisonger v. State*, Wyo.1978, 581 P.2d 1094; and *Johnson v. State*, Wyo.1977, 562 P.2d 1294.

Affirmed.

hibits such weight as you deem appropriate. These exhibits are not offered as proof of the crime, but merely go to the question of intent, if any, as you may determine."