Pamela D. GAYLER, Appellant
(Defendant),

v.

The STATE of Wyoming, Appellee
(Plaintiff).  (Two Cases.)

Nos. 97–56, 97–57.

Supreme Court of Wyoming.

April 24, 1998.

Sylvia L. Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; Diane M. Lozano, Assistant Appellate Counsel, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Kimberly A. Baker–Musick, Assistant Attorney General, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

Appellant Pamela Gayler appeals from the judgment and sentence and the probation revocation which the trial court entered after a jury found that she was guilty of delivering a controlled substance.

We reverse and remand.

### ISSUES

Gayler presents four issues for our review:

*Issue I*

The trial court erred by failing to declare a mistrial or take any immediate action to mitigate the undue prejudice caused by the State's improper attack on [the] appellant's character in violation of W.R.E. 404(b).

*Issue II*

Prosecutorial misconduct denied the appellant a fair trial when the State's attorney 1) made an improper community outrage appeal in closing argument; and 2) intentionally and improperly elicited inadmissible testimony from a key State witness.

*Issue III*

Reversible error was committed when Officer Clark vouched for the credibility of the State's main witness.

*Issue IV*

The cumulative effect of the errors discussed above was such as to deny the appellant her right to a fair trial and substantial justice.

## FACTS

The Cokeville school principal contacted Kim Clark, an officer with the Lincoln County sheriff's department, to report that he had been told that Gayler might be selling drugs at her home. Deputy Clark subsequently decided to attempt to make a controlled buy from Gayler, and he contacted an informant who knew her. The informant was facing charges for disorderly conduct at the time. Deputy Clark told the informant that, if he made two drug buys, the deputy would speak on the informant's behalf when he appeared in court on the pending charges. The informant was later charged with delivering drugs to several teenagers. Consequently, at the time of this trial, he was facing a possibility of having to serve up to seventy-one years in the penitentiary.

The first attempted buy, on April 25, 1995, was unsuccessful. On May 5, 1995, the informant went to Gayler's home for a second attempt at making a buy. The informant and his car had been searched, he had been given money, and he had been wired with an electronic transmitter. The informant entered Gayler's house and purchased a small amount of methamphetamine for ten dollars. After he left Gayler's house, the informant gave a small baggie containing the methamphetamine to Deputy Clark.

Gayler was arrested and subsequently convicted of delivering a controlled substance. She was sentenced to serve a prison term of not less than one year nor more than two years. As a result of this conviction, the trial court revoked Gayler's probation in a separate case and sentenced her to serve a one- to two-year prison sentence concurrently with her sentence for delivering a controlled substance. Gayler appeals from her conviction for delivering a controlled substance and from the probation revocation.

## DISCUSSION

### A. Other Bad Acts Evidence

■ In Gayler's first claim of error, she asserts that the trial court erred by failing to declare a mistrial or take immediate action to mitigate the undue prejudice caused when the prosecutor improperly attacked her character in violation of W.R.E. 404(b). The State argues that Gayler opened the door to the challenged evidence and that the evidence was not offered pursuant to, nor was it violative of, W.R.E. 404(b).

■ The decision to grant a mistrial rests within the trial court's sound discretion, and we will not reverse that decision unless an abuse of discretion has been shown which prejudiced the defendant. *Craver v. State,* 942 P.2d 1110, 1115 (Wyo.1997). An abuse of discretion has been described as a ruling which " 'exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did.' " *Miller v. State,* 904 P.2d 344, 351 (Wyo.1995) (quoting *Duffy v. State,* 730 P.2d 754, 757–58 (Wyo.1986)).

During the trial, Deputy Clark explained to the jury how the police proceed when they are setting up an undercover buy operation:

Q. Okay. How do you go about choosing who you [are] going to attempt to buy from?

A. You don't just pick someone out of the air. It's someone that you have to have some previous knowledge that they are involved with drugs. Someone—Normally, a citizen will report some activity. At that point, you might do some surveillance on that particular individual for a period of time to establish that they may be involved in—in drugs. It might be during an interview from another drug dealer that they'll give this name. There's—there's several ways like that.

Q. Okay. When you suspect an individual, what else do you do to check that individual out, the individual that might be selling drugs?

A. Initially, you'll take the name and do a background check and see if they

have ever been arrested for drugs before. Again, you—you ask around. To work drugs, you have to have informants, people who give you information. And you'll ask all of your informants and come up with the information.

. . . .

Q. Okay. Deputy Clark, I would like to draw your attention squarely back to this case.

Who did you decide you were going to attempt to buy drugs from?

A. One of the people was Pamela Gayler.

Q. Okay. How long had you known Pamela Gayler?

A. Since August of '94.

Q. How long has she been in the Cokeville area?

A. That entire time.

Q. Okay.

A. From then until now.

Q. How many times have you spoken with her?

A. At least twenty.

Q. Do you know where she came from?

A. Idaho.

Q. And how do you know that?

A. I did some checking.

Q. Okay. What were the factors—some of the factors that you can talk about that made you decide to attempt to buy from Ms. Gayler?

A. I had done some background checks on Ms. Gayler. And I had gotten some information from the high school principal in Cokeville. Actually, the—the whole school principal. He's the principal of the entire school.

On cross-examination, the defense attempted to provide other reasons why Deputy Clark had checked into Gayler's background. In doing so, the defense elicited testimony from Deputy Clark which revealed that he went to Gayler's house regarding a domestic dispute, that Gayler told him she knew where drugs could be bought in Kemmerer, and that Gayler reported to Deputy Clark that two individuals who possessed cocaine had visited her house and wanted her

to set up a methamphetamine lab. Gayler offered to work with Deputy Clark to apprehend these individuals. On redirect, the prosecutor had the following discussion with Deputy Clark:

Q. [The defense attorney] asked you a couple of questions about Ms. Gayler asking you about setting up a meth lab?

A. Yes.

Q. And you indicated that she did and that you denied that?

A. Yes.

Q. Why did you deny that?

A. Primarily, for two reasons. Well, three reasons. I had checked her background. And she had a couple of felonies on her background—

[DEFENSE ATTORNEY]: I'm going to object, your Honor. May I approach the bench?

THE COURT: Just continue on. I'll talk to you about it later.

At the next recess, the defense moved for a mistrial on the basis of Deputy Clark's testimony about Gayler's prior felonies or, in the alternative, for a limiting instruction. The prosecution argued that the testimony regarding the two prior felony convictions was proper because the defense had opened the door to such evidence by "suggesting that Mr. Clark was aberrant in his duties by not pursuing Ms. Gayler's request." The trial court reserved ruling on the defense's requests.

At the end of the trial, the trial court considered Gayler's motion for a mistrial. Instead of issuing a decision at that time, the trial court allowed the parties to submit additional briefing on the issue. After receiving the briefs, the trial court sent a letter to the parties, announcing its decision to deny the motion for a mistrial.

This Court has recognized that a defendant may open the door to otherwise inadmissible testimony when he inquires about a particular subject.

"Succinctly stated, the 'opening the door' rule is that a party who in some way permits the trial judge to let down the gates to a field of inquiry that is not com-

petent but relevant cannot complain if his adversary is also allowed to avail himself of the opening within its scope."

*Fortner v. State*, 843 P.2d 1139, 1148 (Wyo. 1992) (quoting *Sanville v. State*, 593 P.2d 1340, 1344 (Wyo.1979)).

When the defense counsel cross-examined Deputy Clark, he pursued a line of questioning which implied that Gayler was a law-abiding citizen who was willing to help law enforcement personnel in their drug investigations by aiding with the apprehension of drug dealers. By pursuing this line of questioning, the defense opened the door to the subject of Gayler's lawfulness, and the prosecution was entitled to elicit testimony which showed that Gayler was not such a lawful citizen.

We recognize that limits to the open-door rule exist, especially "when testimony as prejudicial as that usually excluded by W.R.E. 404(b) is involved." *Id.* We, therefore, will not allow a prosecutor to engage in overkill which is only moderately justified by the defendant's opening of the door to a certain subject. *Id.* The line between permissible inquiry and prosecutorial overkill, however, was not crossed in this case. The prosecution was entitled to tell the jury that the reason Deputy Clark did not accept Gayler's offers to help apprehend other drug dealers was because she had prior felonies. The prosecution thereafter steered away from the subject of Gayler's prior felonies without eliciting further testimony on the subject. We hold that the testimony about Gayler's prior felonies was admissible once Gayler opened the door to the subject through the cross-examination of Deputy Clark. Although the testimony informed the jury that Gayler had committed other crimes, such evidence was admissible as "a consequence of the reciprocal nature of the 'open the door' rule." 843 P.2d at 1148–49.

■ Gayler also challenges comments which Deputy Clark made while he was explaining how he decided from whom he would attempt to make a buy. Specifically, Gayler complains about Deputy Clark's statements that he usually picked people who he knew were involved with drugs, that he checked their backgrounds to see whether they had ever been arrested on drug-related charges, and that he chose Gayler because he had received information on her and he had checked her background.

■ Gayler did not object to these statements. This Court must, therefore, determine whether any of the statements was so prejudicial as to constitute plain error.

A three-part test has been established for determining whether an error may achieve the status of plain error. First, the record must be clear as to the incident which is alleged as error. Second, the party claiming that the error amounted to plain error must demonstrate that a clear and unequivocal rule of law was violated. Finally, that party must prove that a substantial right has been denied him and as a result he has been materially prejudiced.

*Bradley v. State*, 635 P.2d 1161, 1164 (Wyo. 1981). *See also Beintema v. State*, 936 P.2d 1221, 1224 (Wyo.1997). The purpose of Deputy Clark's testimony was to explain in general how an individual was selected for an attempted buy. That testimony, coupled with Deputy Clark's statement that he had received a report that Gayler was selling drugs, helped the jury to understand that Deputy Clark did not randomly target her as the defense had intimated in its opening statement. The challenged statements completed the history of the transaction and aided in the natural development of the facts. *Id.* The admission of the evidence, therefore, did not violate a clear and unequivocal rule of law.

## B. Witness Credibility

■ Gayler complains that the following exchange between the prosecutor and Deputy Clark constituted error per se under Wyoming jurisprudence:

Q. Through your work with [the informant] had you formed an opinion as to whether or not he was honest with you?

A. I did.

Q. What was that opinion?

A. I felt like he was.

■ "Rulings on the admissibility of evidence are committed to the sound discretion

of the district court and are not subject to appellate second guessing absent an abuse of discretion." *Curl v. State*, 898 P.2d 369, 373 (Wyo.1995). Opinions that vouch for the credibility of witnesses are improper if those opinions have the capacity to decide the case for the jury. 898 P.2d at 374. This is because jurors are deemed to be experts in determining the credibility of the witnesses. *Stephens v. State*, 774 P.2d 60, 68 (Wyo.1989).

Two rules flow from the Wyoming cases that have addressed this issue. First, the prosecution may not elicit opinion testimony from a witness, lay or expert, concerning the guilt of the accused. *Bennett v. State*, 794 P.2d 879, 881 (Wyo.1990); *Stephens*, 774 P.2d at 66. Second, the prosecution may not elicit an expert witness' opinion with regard to another witness' credibility. *Stephens*, 774 P.2d at 68. These rules ensure that it is the jury which resolves the factual issues, judges the credibility of the witnesses, and ultimately determines the guilt or innocence of the accused. *Wells v. State*, 846 P.2d 589, 596 (Wyo.1992), *denial of habeas corpus aff'd*, 37 F.3d 1510 (10th Cir.1994).

■ Gayler's failure to object to the challenged testimony requires that we review her claim under the plain error analysis which we defined earlier in our discussion. "Testimony which helps illuminate some other aspect of the case will not be labeled plain error simply because it has the collateral effect of bolstering the credibility of another witness." *Curl*, 898 P.2d at 374.

Deputy Clark did not express an opinion with regard to Gayler's guilt or innocence. Nor did he offer an expert opinion regarding whether the informant was a truthful witness. Deputy Clark merely stated that he thought the informant was honest with him when they worked together. Although Deputy Clark's testimony did not rise to the level of plain error, we recommend that these types of inquiries be avoided because the determination of whether a statement which refers to a witness' honesty constitutes error hinges so largely on how artfully the question and response are phrased.

## C. Closing Argument

■ Gayler claims that the prosecutor made an improper community outrage appeal in his closing argument. The State maintains that Gayler has failed to establish that she was substantially prejudiced by any misconduct.

■ We review claims of prosecutorial misconduct by using the following standard of review:

Claims of prosecutorial misconduct are settled by reference to the *entire* record and hinge on whether a defendant's case has been so prejudiced as to constitute denial of a fair trial. Similarly, the propriety of any comment within a closing argument is measured in the context of the *entire* argument. A trial court's rulings as to the scope of permissible argument will not be disturbed absent a "clear or patent" abuse of discretion. Even then, reversal is not warranted unless a reasonable probability exists, absent the error, that the appellant may have enjoyed a more favorable verdict.

*Arevalo v. State*, 939 P.2d 228, 230 (Wyo. 1997) (citations omitted).

In the prosecutor's closing argument, he discussed the government's war against drugs and appealed to the jury to join the government's war by finding Gayler guilty of delivering a controlled substance:

Drugs, Ladies and Gentleman, is there a more insidious or terrible disease that affects our society today? It tears families apart; steals away our youth. It's ripping the seams of our nation. Costs the taxpayers millions of dollars.

You heard Deputy Clark and Deputy Hansen testify right there on that witness stand. They're both in the courtroom here today. And they are good, honest, decent, family men. And they are on the front line of the war on drugs in Lincoln County. Unfortunately, the battle is being fought here, too. It's just not in the bigger areas, it's in our small county.

They told you that there is a problem here in our county. And they told you that there is a problem with methamphetamine in our county. Methamphetamine

appears to be the drug of choice these days. And they gave you some reasons for that. It's cheap. It's readily available. It's what the children seem to choose these days when they use drugs.

. . . .

Ladies and Gentleman, Lincoln County Law Enforcement is taking the war on drugs dead serious. They are not going to tolerate the delivery of methamphetamine or any drugs in this county. It doesn't matter if it's a small amount, like what we had here, or a large amount. We are not going to tolerate it. Absolutely not. . . .

This is your opportunity, as a jury, to take a stand with Lincoln County Law Enforcement and say that we will not tolerate drug dealers in our county. We will not tolerate it.

[DEFENSE ATTORNEY]: I'm going to object, your Honor. That places a different standard before the Jury than the Jury's standard of proof in this case. It also argues that they should look at something other than the evidence in this case in making the decision. I think that's improper argument in closing. (Pause.)

THE COURT: The objection is sustained.

[THE PROSECUTOR]: Ladies and Gentleman, in closing, I will just ask you to take a stand with law enforcement, take a zero tolerance approach—

[DEFENSE ATTORNEY]: Objection, your Honor. It's the same objection.

[THE PROSECUTOR]: It's an argument, your Honor. It's closing argument. That's why it's called closing argument. I'm arguing the case.

THE COURT: You're asking them to do something besides consider the evidence. . . . The objection is sustained.

[THE PROSECUTOR]: Ladies and Gentleman, in closing, I'll just ask you to send the message, find the Defendant, Pamela D. Gayler, guilty of delivering methamphetamine to [the informant]. Send that message to the citizens of Lincoln County. Send it to ... Ms. Gayler. Find her guilty of the crime.

Thank you.

■ During closing arguments, counsel may assist the jury by reflecting upon the evidence and drawing reasonable inferences which logically flow from that evidence. *Armstrong v. State*, 826 P.2d 1106, 1116 (Wyo.1992); *Hopkinson v. State*, 632 P.2d 79, 145 (Wyo.1981), *cert. denied*, 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982).

The prosecutor is not only entitled, he is encouraged to advocate strongly, even vehemently, for conviction. But while he may strike hard blows, the prosecutor is not at liberty to strike foul ones. *State v. Draughn*, 76 Ohio App.3d 664, 602 N.E.2d 790, 793–94 (1992).

■ Arguments which are designed to appeal to the jury's prejudice or passion are improper. *Armstrong*, 826 P.2d at 1116; *Hopkinson*, 632 P.2d at 145. The fear in allowing such appeals is that the accused will be convicted for reasons wholly irrelevant to her guilt or innocence. *United States v. Monaghan*, 741 F.2d 1434, 1441 (D.C.Cir. 1984), *cert. denied*, 470 U.S. 1085, 105 S.Ct. 1847, 85 L.Ed.2d 146 (1985). "Jurors may be persuaded by such appeals to believe that, by convicting a defendant, they will assist in the solution of some pressing social problem. The amelioration of society's woes is far too heavy a burden for the individual criminal defendant to bear." *Id.*

■ The prosecutor's argument was obviously an appeal to the jury's sense of duty to help local law enforcement by convicting Gayler. The argument was improper because it appealed to the jury's passion and prejudice against drug-related crimes. Although a prosecutor is permitted a certain degree of latitude during closing arguments, he is not allowed to urge the jury to convict an accused on any basis other than that the evidence shows guilt beyond a reasonable doubt. *United States v. Barker*, 553 F.2d 1013, 1025 (6th Cir.1977).

■ Given our determination that the argument was improper, we must next decide whether the argument was so prejudicial that it warrants reversal. We conclude that the prosecutor's repeated remarks, in the face of sustained objections, were a blatant invitation to the jurors to convict Gayler not on the

evidence but because of their fear and disapproval of drug dealers in general. The statements undermine our confidence in the verdict, and we hold that a substantial likelihood exists that Gayler may have enjoyed a more favorable verdict had the statements not been made.

Reversed and remanded.

THOMAS, J., filed a dissenting opinion in which GOLDEN, J., joined.

THOMAS, Justice, dissenting, with whom GOLDEN, Justice, joins.

I agree with the views expressed in the majority opinion that no reversible error exists with respect to any of the issues argued by Gayler in her appeal, other than the issue of prosecutorial misconduct in the closing argument. Confronted by an anomaly, that may well be unique in the annals of Wyoming jurisprudence, however, I am compelled to dissent from the reversal of Gayler's conviction based upon the claim of error in the closing argument of the prosecuting attorney.

That anomaly is found in the fact that the claimed overreaching by the prosecuting attorney in closing argument was objected to by counsel for Gayler, and the objections were sustained by the trial court with an admonition to the prosecuting attorney. Gayler's counsel did not follow up the favorable rulings on the objections with a motion for a mistrial or any other form of post conviction relief. This despite the fact that a motion for a mistrial on an evidentiary issue was briefed for the trial court after the trial, and the trial judge obviously was less than enthralled with the prosecution of Gayler. What the majority opinion accepts is not only a right of appeal from a favorable ruling, but a right to reversal even though there is no error in the proceedings.

The record is clear that the prosecuting attorney began his closing argument with a theme of a war on drugs in Lincoln County. No objection was initially lodged to this line of argument, but when the jury was invited to join with the law enforcement authorities, defense counsel interjected a vigorous objection in which he persisted:

MR. CORPENING: Drugs, Ladies and Gentleman, is there a more insidious or terrible disease that affects our society today? It tears families apart; steals away our youth. It's ripping the seams of our nation. Costs the taxpayers millions of dollars.

You heard Deputy Clark and Deputy Hansen testify right there on that witness stand. They're both in the courtroom here today. And they are good, honest, decent, family men. And they are on the front line of the war on drugs in Lincoln County. Unfortunately, the battle is being fought here, too. It's just not in the bigger areas, it's in our small county.

They told you that there is a problem here in our county. And they told you that there is a problem with methamphetamine in our county. Methamphetamine appears to be the drug of choice these days. And they gave you some reasons for that. It's cheap. It's readily available. It's what the children seem to choose these days when they use drugs.

* * *

And if it gets to that, Ladies and Gentleman, this case isn't entrapment. Absolutely not entrapment. She knew exactly what she was doing. You can hear it and you can hear it from the witnesses on the stand. She knew what she was doing. She knew she could get in trouble. She has experience in this area. She knew it. She could get in trouble. She was merely presented with the opportunity to commit the crime. And that, absolutely, is not entrapment. These type of cases are not entrapment cases. (Pause.)

Ladies and Gentleman, Lincoln County Law Enforcement is taking the war on drugs dead serious. They are not going to tolerate the delivery of methamphetamine or any drugs in this county. It doesn't matter if it's a small amount, like what we had here, or a large amount. We are not going to tolerate it. Absolutely not. Part of that war on drugs is using individuals like Glen Prows. You don't have to like Glen Prows. But people you like and people that I like can't go up to a drug dealer and make a buy from that drug dealer. If

you're going to put drug dealers out of business, you have to use people like Glen Prows.

This is your opportunity, as a jury, to take a stand with Lincoln County Law Enforcement and say that we will not tolerate drug dealers in our county. We will not tolerate it.

MR. CARROLL: I'm going to object, your Honor. That places a different standard before the Jury than the Jury's standard of proof in this case. It also argues that they should look at something other than the evidence in this case in making the decision. I think that's improper argument in closing. (Pause.)

THE COURT: The objection is sustained.

MR. CORPENING: Ladies and Gentleman, in closing, I will just ask you to take a stand with law enforcement, take a zero tolerance approach—

MR. CARROLL: Objection, your Honor. It's the same objection.

MR. CORPENING: It's an argument, your Honor. It's closing argument. That's why it's called closing argument. I'm arguing the case.

THE COURT: You're asking them to do something besides consider the evidence, Mr. Corpening. The objection is sustained.

MR. CORPENING: Ladies and Gentleman, in closing, I'll just ask you to send the message, find the Defendant, Pamela D. Gayler, guilty of delivering methamphetamine to Glen Prows. Send that message to the citizens of Lincoln County. Send it to Ms. Prows—or Ms. Gayler. Find her guilty of the crime.

This Court has addressed similar or analogous situations contextually, philosophically, and as a matter of policy. This is the only case disclosed by my research in which a convicted felon has achieved a reversal by objecting, having the objection sustained, seeking no further relief in the trial court, and then successfully raising the circumstance as error on appeal. I invite attention to the following pronouncements from this Court:

Finally, while we agree the comment was improper as a misstatement of the facts, we find no prejudice in the prosecutor's statement that appellant had spent four years corrupting the victim. The trial court sustained appellant's objection to the comment and immediately declared it a misstatement of the facts. Finding no prejudice in the statement, we find no reversible error. *See Tennant [v. State,* 786 P.2d 339 (Wyo.1990) ], 786 P.2d at 346.

*James v. State,* 888 P.2d 200, 208 (Wyo.1994).

In the present case, the prosecutor began his closing argument by carefully informing the jury that one of its duties was to weigh and consider the evidence and the credibility of the witnesses. He emphasized that it was the jury's function to decide whom to believe. He then asked the jury to keep in mind that nothing said by counsel was evidence. After appellant's objection to the prosecutor's statement that he did not think the State's witnesses lied, the court ruled that the remark was improper. However, in light of other remarks in both opening and closing arguments, the trial court did not find that the remark required a mistrial. The court, instead, cautioned the prosecutor that if any further expressions of personal belief were made during closing arguments, a directed verdict would be entered in favor of appellant. Thereafter, the prosecutor's comments were entirely proper.

The scope of permissible argument, as well as the injury caused by improper argument, is best left to the trial court. *Hopkinson v. State,* Wyo., 632 P.2d 79 (1981), cert. denied 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982). We will not reverse the trial court's determination absent a showing that it was without legitimate basis. *Hopkinson v. State,* supra. Under the circumstances presented here, we find that the trial court's determination to not grant appellant's motion for a mistrial was legitimate, and we, therefore, find no abuse of discretion.

*Noetzelmann v. State,* 721 P.2d 579, 584 (Wyo.1986).

Appellant's position in this area hangs upon a tenuous thread. Although he ar-

gues that immaterial and prejudicial evidence was introduced which inflamed the passion and prejudice of the jury, it is notable that all objections were sustained thereto. The brief of appellant further does not allege or make any statement or assertion that defendant did not know of these photographs or the matters of the drugs about which complaint was made the drugs having been taken, by the way, from the billfold of defendant at the time of his arrest, and the film from the camera.

The questioning which appellant now alleges was prejudicial is contained in the testimony of Edward R. McAuslin, an investigator with the Riverton Police Department, that at the time of the arrest there was found among appellant's possessions a package of amphetamines. No objection or motion to strike this testimony was made. The only objection made to a following question was aimed at the witness's identification of these as being based upon the analysis by Jim Bonnel and that it was hearsay. Appellant did move and ask that this evidence be stricken and that the jury be advised to disregard it because the opinion was based upon hearsay. The court sustained this motion and directed the jury to disregard this testimony. No further motion was made with regard to the preceding testimony, nor was a mistrial requested. We must assume that in absence of further objection this admonition satisfied counsel, *Oldham v. State,* Wyo., 534 P.2d 107, 111.

*Brown v. State,* 581 P.2d 189, 190–91 (Wyo. 1978).

Appellant points out and criticizes a number of passages from the closing argument of the State as prejudicial error. Before addressing ourselves to the merits of these criticisms we must consider whether defendant is in a position to complain. No formal objection was made except one at a point immediately before the close of the argument in chief when the speaker referred to the jury as being those who determine the standards of the community and spoke of the growing crime rate in the Nation. The court sustained the objection, but there was no motion to have the statement stricken or to instruct the jury to disregard it. Earlier in the opinion, when we alluded to the prosecuting attorney's opening statement, we noted the necessity of preserving objection to any error relied upon as prejudicial and reversible, and we at that time called attention to *Murdock v. State, supra,* 351 P.2d at 679, discussing a similar problem but applying specifically to the taking of testimony. On the same rationale, the necessity of an objection to a closing argument is a point which has often been separately discussed by the court. Perhaps the first time was in *Horn v. State,* 12 Wyo. 80, 73 P. 705, 727, where it was said that 'to entitle such a matter as improper remarks of counsel to consideration in an appellate court, the record must show that proper objection thereto was made at the time, and overruled * * *.' The ruling was reiterated in *Bennett v. State,* Wyo., 377 P.2d 634, 639; *Cavaness v. State,* Wyo., 358 P.2d 355, 358–359; and *State v. Spears,* 76 Wyo. 82, 300 P.2d 551, 562. Its basis is well known, i.e., the chance for mistrial ought not to be encouraged by permitting counsel to remain silent in the face of what he considers to be prejudicial misconduct of an adversary. We are not unaware of the difficulty attendant to any objection in open court, but we think that this can be minimized perhaps by prearrangement with the court for a recess and discussion outside the jury's hearing of any violation which may occur. Of course, there may be cases where the misconduct of a prosecuting attorney is so flagrant that an appellate court would be warranted in reversing even in the absence of such objection, as was noted in *State v. Wilson,* 32 Wyo. 37, 228 P. 803, 809. We have, however, carefully read and reread the closing argument of the prosecuting attorney and find no such flagrant violation or fundamental error and from the rejection of the motion for new trial evidently neither did the trial court.

*Elmer v. State,* 463 P.2d 14, 22 (Wyo.1969), *cert. denied,* 400 U.S. 845, 91 S.Ct. 90, 27 L.Ed.2d 82 (1970).

The policy reason for refusing to consider such contentions of error is perhaps best

summarized in the following statement by this Court:

The trial judge is in a far superior position to assess the effect of any such occurrence upon the jury, as is the defendant's counsel. We must infer that the defendant's counsel considered the admonishment sufficient, *Duran v. State*, Wyo., 546 P.2d 434, 435; *Oldham v. State*, Wyo., 534 P.2d 107, 111. We have repeatedly held that after the verdict it is too late to raise objection, which must be made at the time of the trial, *Wright v. State*, Wyo., 466 P.2d 1014, 1017.

An earlier case enunciated a general rule applicable to disturbances by the audience, which is applicable in this case. In that case we said the trial judge is responsible for the maintenance of decorum in the courtroom, but has 'A large measure of discretion * * * and its exercise will not be reviewed or disturbed on appeal unless it appears that prejudice resulted from the denial of a legal right,' *State v. Spears*, 76 Wyo. 82, 300 P.2d 551, 560, citing 53 Am. Jur., Trial, § 42, p. 55. The trial judge having observed these proceedings and having determined an admonition was sufficient, we would be forced to speculate if we found this constituted prejudicial error, *State v. Spears*, supra. We have further repeatedly held it was necessary to raise such objections contemporaneously, *Wright*, supra. When defendant's counsel did not ask for further admonition or a mistrial, we cannot notice the same because to allow an attorney to sit silent and preserve a briefcase error for presentation at the appellate level is improper, *Booth v. Hackney*, Wyo., 516 P.2d 180, 184. We have examined many of the authorities cited by appellant, which in most cases are based upon a denial of a motion for mistrial, not a failure to grant a mistrial sua sponte. We cannot allow defendant or his counsel to place the burden of the defense upon a trial judge.

*Gallup v. State*, 559 P.2d 1024, 1026 (Wyo. 1977). To the same effect are *Tryon v. State*, 567 P.2d 290 (Wyo.1977), and *Matter of Town of Greybull*, 560 P.2d 1172 (Wyo. 1977).

I would affirm Gayler's conviction simply on the basis that I can identify no error upon which to premise a reversal.