2002 WY 31

Francisco Orlando SANCHEZ, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 00–197.

Supreme Court of Wyoming.

Feb. 25, 2002.

Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Ryan R. Roden, Assistant Appellate Counsel, Representing Appellant. Argument by Mr. Roden.

Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Devon O'Connell Coleman, Interim Faculty Director, Prosecution Assistance Clinic; and Denise A. Timmermans, Student Intern., Representing Appellee. Argument by Ms. Timmermans.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

LEHMAN, Chief Justice.

[¶ 1] Appellant Francisco Orlando Sanchez appeals from the judgment and sentence that the trial court entered after a jury found him guilty of one count of second degree murder and one count of aggravated assault with a deadly weapon.

[¶ 2] We affirm.

### ISSUES

[¶ 3] Sanchez presents the following issues for appeal:

Whether appellant received ineffective assistance of counsel when appellant's trial counsel stipulated, and advised appellant to stipulate, that the victim's death was caused directly by the defendant's very hard swing of the club to the victim's left temporal area of his head.

Whether prosecutorial misconduct occurred, denying appellant a fair trial, when the prosecutor improperly appealed to community outrage in closing argument, and when the trial court failed to rectify the error with a proper instruction.

## FACTS

[¶ 4] The unfortunate events in this case occurred sometime between midnight and one o'clock on the morning of June 24, 1999. Earlier in the night of June 23, 1999, two sets of friends gathered at their respective residences, located just a few houses from each other. One set of friends included Scott Tannehill (the victim), Dustin Wall, Amber Hartman, Floyd Bisbee, and Mark Boswell. Boswell and Bisbee lived in the house where this group of friends gathered on this evening. Just a few doors down, another group assembled at a house lived in by Sanchez and Dean Ballinger. In addition to Sanchez and Ballinger, Kenneth Harvey, Robert Vasser, Lance Strever, and Jeanne Skinner congregated at this house.

[¶ 5] In the weeks leading up to June 24, Bisbee, Boswell, the victim, and Wall had engaged in some unpleasant confrontations with Sanchez and Ballinger. These confrontations occurred apparently because an ex-girlfriend of Ballinger's had been found by him to be visiting the Bisbee/Boswell residence. A tension between the two groups of friends developed, and the fact that they lived so closely intensified the tension.

[¶ 6] On June 24, the victim, Wall, Bisbee, and Boswell went outside in the alley to smoke cigarettes. While they were outside, they noticed two people standing outside the Ballinger/Sanchez home smoking cigarettes. The foursome thought the two figures were Ballinger and Sanchez and decided to go talk to them to "resolve the situation" between the two groups. As the foursome got closer, they realized the two people were not Ballinger and Sanchez and continued to walk past them. The two individuals were Harvey and Vasser. Harvey called out to Boswell, and it turned out they were old classmates. Once they realized the two boys knew each other, they all began to talk. Boswell asked if Harvey and Vasser would go get Ballinger and Sanchez so that the foursome could talk to them. The two went inside and informed Ballinger and Sanchez that the four individuals were waiting outside to see them.

[¶ 7] Sanchez and Ballinger went outside to confront the foursome. Sanchez spilled his beer as he attempted to set it down and stated, "This better be good, because I just spilled my beer, so someone's going to the hospital." Wall responded that they did not want to fight. Some arguing occurred, and Sanchez reached behind his back and pulled out a club. He swung it at Wall, barely missing when Wall simultaneously stepped back and moved his head. Sanchez then stepped toward the victim and swung at him. This time, Sanchez connected with the victim's head just above his left temple. The victim dropped to his knees, stood, stumbled forward, and fell straight to the ground. The remaining three friends picked the victim up and walked him back to the Bisbee/Boswell house.

[¶ 8] Once back at the Bisbee/Boswell house, the victim objected to being taken to the hospital and instead asked to be taken home. The three friends agreed to do so and told the victim to wake his father when he got home. They took the victim home, and he walked into his house. Instead of waking his father, however, the victim unfortunately went straight to bed.

[¶ 9] The next morning, the victim's father heard his son breathing strangely. When his attempts to wake his son were not successful, he called 911. The victim's breathing continued to get worse and finally stopped. His father performed rescue breathing until the ambulance arrived. The ambulance took the victim to the hospital, and he was later life-flighted to Billings, Montana, where he died on June 25, 1999.

## DISCUSSION

### Effective Assistance of Counsel

[¶ 10] Sanchez contends that his counsel's representation was ineffective because he stipulated that the victim's death was "caused directly by the Defendant's very hard swing of the club to Tannehill's left temporal area of his head." Sanchez maintains that it was the State's burden to prove all the elements of the crime of second degree murder, which includes that Sanchez directly and proximately caused the victim's death. He insists that the victim's friends' failure to take him to the hospital created an intervening cause, which broke the chain of

causation. The State counters that an intervening cause defense was not available to Sanchez given the facts of this case and that the stipulation was in furtherance of a sound self-defense trial strategy.

[¶ 11] We have consistently applied the following standard when we review ineffective assistance of counsel claims:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Pearson v. State*, 12 P.3d 686, 691 (Wyo.2000) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)); *see also Mapp v. State*, 953 P.2d 140, 143 (Wyo.1998). In pursuing such a claim, we invoke a "strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Jackson v. State*, 902 P.2d 1292, 1295 (Wyo.1995).

[¶ 12] The first hurdle that Sanchez must clear pursuant to the standard of review is to demonstrate that his counsel's performance was deficient. In arguing that his counsel should not have stipulated to the fact that his blow to the victim's head directly and proximately caused the victim's death, Sanchez asserts that an intervening cause may have caused the victim's death. He insists that the victim had a good chance of surviving and that his friends' failure to take him to the hospital could have been the reason the victim died. He complains that we will never know because the stipulation prevented any medical testimony regarding this possibility.

[¶ 13] The State cites *Restatement, Second, Torts* (1965) for authority that the victim's friends were not obligated to take him to the hospital. The *Restatement* provides:

§ 322. Duty to Aid Another Harmed by Actor's Conduct

If the actor knows or has reason to know that by his conduct, whether tortious or innocent, he has caused such bodily harm to another as to make him helpless and in danger of further harm, the actor is under a duty to exercise reasonable care to prevent such further harm.

§ 324. Duty of One Who Takes Charge of Another Who is Helpless

One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by

(a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge, or

(b) the actor's discontinuing his aid or protection, if by so doing he leaves the other in a worse position than when the actor took charge of him.

[¶ 14] Following these rules of law, we agree with the State that the victim's friends did not have an affirmative duty to seek medical attention for him. Sanchez created the dangerous situation. The friends got the victim out of the dangerous situation and to his own home where they thought the victim would wake his father. The friends all believed the victim's father was a registered nurse and that he would know what to do for his son. By rescuing the victim and depositing him at his home, the friends did not put the victim in a worse situation.

[¶ 15] We find it curious that Sanchez cites the case of *United States v. Swallow*, 109 F.3d 656 (10th Cir.1997), for the proposition that proximate cause is an essential element of the crime of first and second degree murder. That case also explains why Sanchez's intervening cause argument fails:

The Restatement of Torts similarly indicates that the mere existence of an unperformed duty does not rise to a superseding

cause that can break the causal chain. *See Restatement (Second) of Torts* § 452, cmt. c, illus. 4 (1965). Furthermore, "in cases involving death from injuries inflicted in an assault, courts have uniformly held that the person who inflicted the injury will be liable for the death despite the failure of third persons to save the victim." *Kusmider v. State,* 688 P.2d 957, 959 (Alaska Ct.App.1984) *(citing Wright v. State,* 374 A.2d 824, 829 (Del.1977)); *Pettigrew v. State,* 554 P.2d 1186, 1193 (Okla.Ct.Crim. App.1976); *People v. McGee,* 31 Cal.2d 229, 187 P.2d 706, 714–15 (1947).

*Swallow,* 109 F.3d at 660.

■ [¶ 16] The State finally asserts, and this court agrees, that Sanchez's ineffective assistance of counsel assertion fails because the stipulation was made in the execution of a sound trial strategy. By making the stipulation, Sanchez was able to appear as if he had nothing to hide from the jury in asserting his self-defense strategy. He also avoided, as the State points out, evidence regarding the actual confrontation and that the victim in no way provoked or made a move toward Sanchez as well as detailed scientific and medical evidence regarding the victim's extensive head injuries and the last hours of his life as his brain progressively shut down.

### Prosecutorial Misconduct

[¶ 17] Sanchez next claims that statements that the prosecutor made during his closing arguments wherein he told the jury that this was its opportunity to speak for the victim compromised Sanchez's right to a fair trial. He further argues that the trial court's improper instruction to the jury failed to cure the prejudice caused by the prosecutor's statement. The State replies that Sanchez fails to demonstrate that the comment materially prejudiced him in such a way as to deny him a fair trial.

■ [¶ 18] We review claims of prosecutorial misconduct by using the following standard of review:

Claims of prosecutorial misconduct are settled by reference to the entire record and hinge on whether a defendant's case has been so prejudiced as to constitute denial of a fair trial. Similarly, the propriety of any comment within a closing argument is measured in the context of the entire argument. A trial court's rulings as to the scope of permissible argument will not be disturbed absent a "clear or patent" abuse of discretion. Even then, reversal is not warranted unless a reasonable probability exists, absent the error, that the appellant may have enjoyed a more favorable verdict.

*Metzger v. State,* 4 P.3d 901, 910 (Wyo.2000) (quoting *Gayler v. State,* 957 P.2d 855, 860 (Wyo.1998)).

[¶ 19] The defense attorney made the following comments in his closing argument:

[W]hatever I say, whatever I do, it's not [Sanchez's] words. He can't talk. He can only talk through me. I'm the only person that can operate as his mouthpiece, if you will, and I'm a poor substitute for that.

Ladies and gentlemen, over the years I've found that juries such as you, juries selected from the heart of our community, can come before the courtroom and make the right decision....

. . .

So ladies and gentlemen, as I come before you, please bear in mind that Frankie can't talk. It's only through me that he'll be able to talk to you.

■ [¶ 20] In the prosecutor's rebuttal closing argument, he told the jury that they had the opportunity to speak for the victim since he was not able to speak for himself. The statements were made in the following context:

PROSECUTOR: I agree with [defense counsel]. Life, liberty and the pursuit of happiness—those are very, very important standards. You and I get to speak for Scott, just as the defense talked on behalf of their client. And you get the opportunity now to tell the defendant what he did was wrong. And this isn't about life, liberty or the pursuit of happiness. Scott didn't get to speak then. He didn't get to speak during this trial. And Scott doesn't get to speak today. But you have now the opportunity to speak for Scotty.

DEFENSE COUNSEL: Your Honor, I would object to that. May I approach the bench?

THE COURT: You may approach.

(Bench Conference:)

DEFENSE COUNSEL: Judge, at this particular point, I would move for a mistrial on the basis of the prosecutor asking the jury to speak for the deceased, Scott Tannehill. What the prosecutor is doing is totally improper. The prosecutor is asking the jury to impose a community standard and speak for a victim. That is absolutely, totally improper, and it is grounds for a mistrial. I would request a mistrial. It cannot be—the corruption that's resulted from it could not be corrected, and I would ask for a mistrial at this point.

[¶ 21] The court agreed that the statement was improper, but it denied the motion for mistrial on the basis that it was not unduly prejudicial. The judge then gave the following instruction to the jury:

THE COURT: Ladies and gentlemen, you are instructed to disregard the comments of counsel advising you that you are to speak for the victim, for the deceased. That's not correct. You are to disregard the remarks. As a jury, you are here to speak for the community in making a decision in this process and not to speak for any individual.

■ [¶ 22] In *Gayler v. State,* 957 P.2d 855 (Wyo.1998), we warned against community outrage arguments that improperly appeal to a jury's prejudice or passion:

Arguments which are designed to appeal to the jury's prejudice or passion are improper. The fear in allowing such appeals is that the accused will be convicted for reasons wholly irrelevant to her guilt or innocence. "Jurors may be persuaded by such appeals to believe that, by convicting a defendant, they will assist in the solution of some pressing social problem. The amelioration of society's woes is far too heavy a burden for the individual criminal defendant to bear."

957 P.2d at 861 (quoting *United States v. Monaghan,* 741 F.2d 1434, 1441 (D.C.Cir. 1984), cert. denied, 470 U.S. 1085, 105 S.Ct. 1847, 85 L.Ed.2d 146 (1985)) (citations omitted).

[¶ 23] In *Gayler,* we found that the prosecutor's repeated statements inviting the jury to take a stand with law enforcement in the war on drugs and find the defendant guilty in the face of sustained objections was an improper community outrage argument because it appealed to the jury's passion and prejudice against drug-related crimes. 957 P.2d at 861–62. We were concerned in that case that the remarks were a "blatant invitation to the jurors to convict Gayler not on the evidence but because of their fear and disapproval of drug dealers in general." *Id.* The comments at issue here, however, do not rise to the same level of impropriety. The prosecutor merely told the jury that it had the opportunity to speak for the victim. We do not perceive the comment as being an improper community outrage appeal or that it prejudiced Sanchez unfairly. For the same reason, we are not persuaded that the court's instruction worsened the prejudice to Sanchez. The court's instruction simply indicated that the jurors were there to serve the community.

[¶ 24] Affirmed.

GOLDEN, J., concurring.

[¶ 25] I write separately because I view slightly differently Sanchez's second issue alleging, first, prosecutorial misconduct in the waning minutes of the prosecutor's rebuttal summation and, second, trial court error in the trial court's curative jury instruction relating to that instance of alleged prosecutorial misconduct.

[¶ 26] The record reveals that in the waning minutes of the prosecutor's rebuttal summation, the prosecutor stated, in an effort to respond to Sanchez's counsel's summation remark that he was speaking for Sanchez, that the jury "get[s] to speak for [the victim].... [Y]ou have the opportunity to speak for [the victim]." Sanchez's counsel objected, stating that the ground of the objection was "the prosecutor is asking the jury to impose a community standard and speak for the victim." Sanchez's counsel moved for a mistrial. The trial court denied the motion, agreed that the comment was improper,

doubted "that it's that prejudicial," and stated "it can be rectified" either by the prosecutor or the trial court. Sanchez's counsel stated that he would "rather have the mistrial . . . [b]ut I want the Court to rectify it. . . . And nothing can rectify it in my mind, but you have the best chance of doing it, because you can tell the jury to completely disregard that last statement and that it was improper." The trial court replied, "I think I have to. I'll make it very brief, and then you [the prosecutor] can finish." The trial court then instructed the jury to disregard the prosecutor's incorrect statement that the jury was to speak for the victim and "you are here to speak for the community in making a decision in this process and not speak for any individual."

[¶ 27] In Sanchez's appellate brief, he asserts that "the trial court's instruction did nothing to rectify the situation, and indeed, prejudiced [Sanchez] further. . . . Instead, the trial court re-emphasized that the jury was there to 'speak for the community' which is not correct at all." Sanchez's assertion here fails for several reasons. For one thing, he cites no pertinent authority and makes no cogent argument in support of the particular ground of objection made by Sanchez's trial counsel. Perhaps appropriate trial objections should have been that the prosecutor had misstated the law of the jury's duty, which was contained in jury instructions 1 and 3 read to the jury;[1] that the prosecutor had appealed improperly to the prejudices of the jury; or had diverted the jury from its duty to decide the case on the evidence. ABA Standards for Criminal Justice, *Prosecution Function and Defense Function*, Standard 3–5.8, at 106 (3d. ed.1993).

[¶ 28] For another thing, and more importantly, Sanchez fails to tell us what, if anything, his trial counsel did after the trial court gave its curative jury instruction. Did his trial counsel object again? He does not say. The record reveals, of course, that his trial counsel, a veteran criminal defense lawyer, did not object to the curative jury instruction. Because he did not object to it, on appeal Sanchez should be making a plain error argument. But, of course, he does not. Because he does not, we should not consider his argument.

[¶ 29] Finally, even examining Sanchez's presentation of the issue of the trial court's allegedly erroneous curative jury instruction, I find he has abjectly failed to support his presentation with either pertinent authority or cogent argument.

---

1. For example, Instruction No. 3 reads in pertinent part: "Remember that you are not advocates, but jurors. The final test of the quality of your service will lie in your verdict, not in the opinions any of you may hold as you retire. You will contribute to efficient judicial administration if you arrive at a just and proper verdict. There can be no triumph except in the ascertainment and declaration of justice."